Argued and submitted December 23, 1994, reversed and remanded for new trial
March 8, 1995

STATE OF OREGON,
*Respondent,*

*v.*

GEORGE CEARLEY,
*Appellant.*

(91D-106283; CA A81903 (Control))

STATE OF OREGON,
*Respondent,*

*v.*

BARBARA L. CEARLEY,
*Appellant.*

(91D-106284; CA A81904)

891 P2d 10

Hari Nam S. Khalsa, Deputy Public Defender, argued the cause for appellants. With him on the brief was Sally L. Avera, Public Defender.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

**EDMONDS, J.**

Defendants appeal their convictions for animal neglect in the first and second degree. ORS 167.330; ORS 167.325.[1] They assign as error the trial court's admission at trial of evidence of an earlier conviction of defendant Barbara Cearley for animal neglect and the resulting terms of her probation, which prohibited her from caring for or possessing livestock. We reverse.

At trial, the state offered the following evidence. Defendants rented stalls in the barn of Haskell Hawkins. They kept nine stallions in the stalls. In July, 1991, Rick Madsen noticed that the stalls were in poor condition and offered to help defendant George Cearley clean and maintain them. By October, 1991, Madsen grew tired of the situation and contacted the Humane Society, because he felt the horses were in "terrible condition."

A representative of the Humane Society investigated the condition of the barn and horses on October 17, 1991. The stall partitions were in disrepair and had exposed nails. Some of the horses' water buckets were contaminated with manure. The floors of the stalls were covered with urine and manure. The horses had poor muscle tone and were not groomed.

The representative was concerned that the horses were not being adequately cared for and, therefore, contacted a Marion County deputy sheriff. On October 25, the deputy, accompanied by a veterinarian, a representative from the Humane Society and others, examined the horses and their living conditions. As a result, the deputy went to defendants' house to talk with them. Defendants told the deputy that the horses belonged to their daughters and that they were helping to take care of the horses. Thereafter, the state filed the charges against defendants for animal neglect.

In response to the state's evidence at trial, defendants presented evidence that they did not own nor have custody and control over the horses in October, 1991. They

---

[1] Defendants were jointly charged and convicted of two counts of animal neglect in the first degree, ORS 167.330, and seven counts of animal neglect in the second degree, ORS 167.325.

testified that their daughters were the owners and were responsible for the horses.[2] Defendants offered into evidence documents of ownership for each horse. According to the transcript of the trial, the documents indicated that defendants' daughters owned the horses.[3]

On rebuttal, the state presented evidence, over defendants' objection, that Barbara had pled no contest to charges of animal neglect in May, 1989, and that she was sentenced to two years' probation with the condition that she was not to own, possess or be responsible for the care of any livestock during the probationary period.[4] According to its terms, Barbara's probation expired in May, 1991.

■    On appeal, defendants assign error to the admission of the evidence of Barbara's conviction and the conditions of probation. They contend that the evidence was not relevant to the charges for conduct in October, 1991. Alternatively, they argue that even if the evidence is relevant, the prejudicial effect of the evidence outweighs its probative value. The state argues that the evidence is admissible under OEC 404(3), because it tends to show that Barbara owned the horses in 1991. The state says:

"[T]he evidence of defendant's prior conviction and terms of probation (that she not possess animals) was relevant to show a motive to conceal her ownership of the horses,

---

[2] Custody of and control over the animals is a material element under both ORS 167.330 and ORS 167.325.

[3] The trial court clerk has certified to this court that all of the exhibits in this case have been destroyed. As a result, our review in this case has been hampered. The facts recited above appear from the transcript of the testimony of the witnesses. UTCR 6.120(3)(a) requires that exhibits be retained by the trial court until the appeal period has elapsed and there is a final disposition of the case. A violation of that rule could result in reversal of a judgment when the record is inadequate for appellate review because of the unavailability of the exhibits. In this case, the record is minimally adequate for review despite the clerk's action.

[4] Before trial, defendants' counsel filed a motion *in limine* seeking to prevent the state from introducing evidence of the prior conviction. The court indicated that it would delay its final ruling until the prosecutor sought to introduce the evidence. Defendant timely objected again at trial. The court ruled:

"The court finds that the defendant has put at issue 'custody or control,' has suggested that the daughter[s] and not the Cearleys are responsible and that if the Cearleys were in fact responsible, it was a mistake or accident. * * * Under the factors listed in *State v. Johns*, [301 Or 535, 725 P2d 312 (1986)], I find that evidence of the no contest plea and the subsequent conditions of probation is, I think, the most relevant evidence on the issue of 'custody or control' * * *."

through a fraudulent paper only transfer of the animals into the daughter's [*sic*] name. The evidence was proper rebuttal to the defense argument on the element of 'custody or control,' and to defendants' claim that the neglect of the animals was through the oversight of others."

OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In *State v. Hampton*, 317 Or 251, 254, 855 P2d 621 (1993), the Supreme Court discussed the application of a three-part test in determining whether evidence is admissible under OEC 404(3). It said:

" '(1) The evidence must be independently relevant for a noncharacter purpose * * *; (2) the proponent of the evidence must offer sufficient proof that the uncharged misconduct was committed and that defendant committed it; and (3) the probative value of the uncharged misconduct evidence must not be substantially outweighed by the dangers or considerations set forth in OEC 403. Each of these requirements must be satisfied before uncharged misconduct evidence is admissible under OEC 404(3).' *State v. Johnson*, [313 Or 189, 195, 832 P2d 443 (1992)] (footnotes omitted)." 317 Or at 254.

To satisfy the first part of the test, the evidence must be independently relevant for a noncharacter purpose. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." OEC 401.

In order for the evidence of the conviction and conditions of probation to be relevant in this case, the evidence must tend to show that, contrary to defendants' testimony, Barbara was the true owner of the horses in October, 1991. Because her probation expired in May, 1991, Barbara had no motive to conceal any ownership or control of the horses in October, 1991, on account of the conditions of probation. Moreover, the transfer of the ownership of the horses to the daughters appears to have occurred before she was placed on

probation.[5] Therefore, any motive to transfer the ownership of the horses to the daughters in name only to avoid the conditions of probation cannot be inferred from the facts of Barbara's conviction and the terms of her probation. We conclude that the evidence was not independently relevant for a noncharacter purpose under OEC 404(3), and its admission was error.

■       Next, the state argues that the trial court's error was harmless because of "the abundance of additional evidence on the element of custody or control." That evidence includes the statement that defendants made to the deputy in October, 1991, and other inculpatory statements made to third parties. Along with defendants, their daughters testified that they owned the animals and that the horses were in their custody and control. Other defense witnesses testified that the animals had not been mistreated and that they were not malnourished. In the light of the fact that the issues of custody or control and neglect were hotly contested at trial, we cannot say that there is little likelihood that the court's error in admitting the evidence affected the verdict. *See State v. Phillips*, 314 Or 460, 471, 840 P2d 666 (1992).

Reversed and remanded for new trial.

---

[5] There is confusion in the record as to which horses were previously owned by Barbara and when the transfers occurred. It appears that at least two of the horses that were the subject of the October, 1991, charges were never owned previously by Barbara. There is some testimony that indicates that one of the horses was transferred from a third party to one of defendants' daughters after May, 1989. However, other testimony indicates that all of the horses were transferred to the daughters before May, 1989, some as early as 1988. There is also evidence that in an unrelated civil proceeding before May, 1989, the daughters were adjudicated to be the owners of the horses.