Argued and submitted October 31, 1995, reversed in part; otherwise affirmed
May 15, petition for review denied August 20, 1996 (324 Or 78)

## STATE OF OREGON,
*Respondent,*

*v.*

## ANN MARGARET HUNTER,
*Appellant.*

(DCR93-12739; CA A82983)

918 P2d 104

Eric M. Cumfer, Deputy Public Defender, argued the cause for appellant. With him on the briefs was Sally L. Avera, Public Defender.

Ann F. Kelley, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Defendant appeals from 37 convictions for animal neglect in the second degree. ORS 167.325. She assigns error to the admission of evidence pertaining to prior similar acts of animal neglect and the failure to grant a motion for judgment of acquittal on six particular counts. She also challenges the trial court's jurisdiction on five counts of animal neglect in the first degree. ORS 167.330. We affirm in part and reverse in part.

In September 1993, a Clackamas County deputy and three animal control officers served a search warrant on defendant's home in West Linn. The officers described the house as filled with garbage, fecal matter and dozens of cats, both live and dead. Of the live cats, some were running loose and others were locked in "animal carriers" without food or water. In the garage, the garbage was shoulder-high and officers found three more carriers with cats, and two dogs in separate kennels with only feces and hair for bedding, without food or water. Outside the house and in the barn were more dogs in kennels without food, water or bedding. Some were emaciated; one had no eyelids. In a stall was a horse carcass that an animal control officer had seen a year earlier; fecal matter was everywhere.

Officers seized 20 dogs, 37 live cats and two dead cats. Many of the animals were too thin, seemed dehydrated and were infested with fleas. Some suffered additional medical problems. Defendant was charged with 52 counts of animal neglect in the second degree, ORS 167.325,[1] and five counts of animal neglect in the first degree, ORS 167.330,[2]

---

[1] ORS 167.325 provides, in part:

"(1) A person commits the crime of animal neglect in the second degree if, except as otherwise authorized by law, the person intentionally, knowingly, recklessly or with criminal negligence fails to provide minimum care for an animal in such person's custody or control."

[2] ORS 167.330 provides, in part:

"(1) A person commits the crime of animal neglect in the first degree if, except as otherwise authorized by law, the person intentionally, knowingly, recklessly or with criminal negligence:

"(a) Fails to provide minimum care for an animal in such person's custody or control; and

based on the deaths of five kittens who had died shortly after being placed in state custody. After a bench trial, the court found defendant guilty of five counts of animal neglect in the second degree, as lesser included offenses of the five first degree counts. Of the 52 second degree counts, the court dismissed three, acquitted defendant of 17 and found her guilty of 32.

Defendant first assigns error to the admission of "*prior bad act evidence*" in the form of testimony about conditions at her home approximately 15 months before the search. Clackamas County Deputy Huva testified that in May 1992 he observed on defendant's property several dogs that were thin, dirty and penned up in an area full of feces, without food or water. Peering inside the window of defendant's house, he also saw both dogs and cats in portable kennels; some were moving and some were not. The inside of the house was "filthy," and a cat sitting on a chair near the window did not move when he knocked. Near a pool at the back of the house, he found a dog's skeletal remains, as well as another dog's body in a nearby kennel.

■    Defendant argues that Huva's testimony was irrelevant to any fact at issue and was instead improper character propensity evidence. She also faults the trial court for not explicitly balancing, on the record, the probative value of that evidence against the risk of prejudicial harm. Assuming without deciding that defendant is correct, any error in admitting Huva's testimony does not require reversal. Under Article VII (Amended), section 3,[3] of the Oregon Constitution, evidentiary error is harmless if there is little likelihood it affected the verdict. *State v. Johnson*, 313 Or 189, 201, 832 P2d 443 (1992); *see also State v. Hansen*, 304 Or 169, 180, 743 P2d 157 (1987) (harmless error standard of OEC 103(1)[4] is

---

"(b)  Such failure to provide care results in serious physical injury or death to the animal."

[3] Article VII (Amended), section 3, provides:

"If the supreme court shall be of the opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial[.]"

[4] OEC 103(1) provides, in part:

consistent with Article VII, section 3, standard). For the following reasons, we find little likelihood that Huva's testimony affected the verdicts.

■    We note at the outset that this was a trial to the court, not a jury. In announcing its verdicts, the court relied primarily on evidence gathered in September 1993, when the warrant was served, and not on observations made by Huva in May 1992.[5] Moreover, we note that testimony from an animal control officer about similar conditions at defendant's home in June 1992, a month after Huva's visit, was admitted without objection.[6] We therefore conclude that any error in admitting Huva's testimony was harmless.[7]

As a second assignment of error, defendant contends that the district court had no jurisdiction to consider the five counts of animal neglect in the first degree, which are Class A misdemeanors. In *State v. Rudder*, 133 Or App 174, 889 P2d 1367, *adhered to as modified* 137 Or App 43, 903 P2d 393 (1995), *rev allowed* 322 Or 489 (1996), we held that the 1993 amendment to ORS 161.635, raising the maximum fine for Class A misdemeanors from $2,500 to $5,000, deprived district courts of jurisdiction to hear those offenses, because

---

"Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"

[5] We acknowledge that the trial court did mention Huva's observations:

"And when the officer was there approximately a year or so before that he found a dead dog carcass and a skeleton which appeared to be a dog in the back yard."

However, that represents only a fraction of the court's findings, the bulk of which focused on conditions observed in September 1993.

[6] The officer testified that in June 1992, she visited defendant's residence and observed several dogs in various stages of emaciation that were penned up in an area covered with feces, with no food, water or bedding available. She also saw a dead horse in the barn.

[7] In arguing that the error was prejudicial, defendant cites *State v. Cearly*, 133 Or App 333, 891 P2d 10 (1995), in which we held that the erroneous admission of evidence was not harmless because issues relating to that evidence "were hotly contested at trial." 133 Or App at 338. In this case, defendant offered several witnesses who countered both the animal control officers' observations and a county veterinarian's medical conclusions. However, *Cearly* does not mean that error is *per se* prejudicial simply because an issue is "hotly contested." The other considerations on which we base our harmless error analysis were not present in *Cearly*.

ORS 46.040 at that time limited district court jurisdiction to misdemeanors whose fines did not exceed $3,000.[8] 133 Or App at 178.

■      Defendant did not contest the court's jurisdiction below. Jurisdictional challenges are never waived; they may be raised for the first time on appeal. *State v. Swikert*, 65 Or 286, 288, 132 P 709 (1913); *State v. Rudder/Webb*, 137 Or App 43, 48, 903 P2d 393 (1995), *rev allowed* 322 Or 489 (1996). However, there is no jurisdictional issue here because defendant was convicted of five counts of animal neglect in the *second* degree, which the district court had jurisdiction to consider.

■      "It is a well established rule that an indictment of one offense includes, by necessary implication, charges of lesser included offenses." *State v. Gibbons*, 228 Or 238, 242, 364 P2d 611 (1961). In *State v. Perks*, 118 Or App 336, 847 P2d 866, *rev den* 316 Or 142 (1993), we held that an indictment charging the defendant with assault in the second degree also implicitly charged him with the lesser included offense of assault in the fourth degree. 118 Or App at 339.

■      In charging defendant here with animal neglect in the first degree, the complaint also implicitly charged her with animal neglect in the second degree, a lesser included offense.[9] Although the five first degree counts may not have properly been before the court by virtue of *Rudder*, the five second degree counts were. Those charges were Class B misdemeanors, ORS 167.325(2), and the trial court had

---

[8] The legislature subsequently amended ORS 46.040, giving district courts jurisdiction over all misdemeanors. It also attempted, however, to retroactively "validate" district court jurisdiction in previous Class A misdemeanor cases, which we held violated the separation of powers under Article III, section 1, of the Oregon Constitution. *State v. Rudder/Webb*, 137 Or App 43, 51-52, 903 P2d 393 (1995), *rev allowed* 322 Or 489 (1996).

[9] "A lesser included offense is one that is included either in the statutory framework defining the greater and lesser offenses or in the accusatory instrument itself." *State v. Wille*, 317 Or 487, 495 n 7, 858 P2d 128 (1975). Animal neglect in the first degree is merely animal neglect in the second degree with the additional element that the failure to provide care resulted in "serious physical injury or death to the animal." *See* notes 1 and 2.

jurisdiction to hear them under ORS 46.040 as it existed at that time.[10]

■ ■ The convictions on those counts are not void, as defendant contends, simply because the complaint was insufficient to charge animal neglect in the first degree. "[W]here a defect related to an allegation * * * does not affect the validity of the conviction on any properly alleged underlying offense," reversal of the underlying conviction is unwarranted. *State v. Ferrell*, 315 Or 213, 224, 843 P2d 939 (1992); *see also State v. Martin*, 54 Or 403, 408, 100 P 1106, 103 P 512 (1909) (improperly pleaded murder charge does not require reversal of conviction for lesser included offense of manslaughter where indictment properly alleged manslaughter); *State v. Steeves*, 29 Or 85, 87-88, 43 P 947 (1896) (same). Because the trial court had jurisdiction to consider the five lesser-included counts of animal neglect in the second degree, we find no jurisdictional defect in those convictions.[11]

Defendant next assigns error to the trial court's denial of her motion for judgment of acquittal on six counts charging animal neglect in the second degree. She contends that the identity of the animal in each count was a "material allegation," and that the state failed to prove that allegation by sufficient evidence in counts 26, 29, 33, 34, 36 and 43.[12]

■ The state contends that defendant did not make that argument below and therefore we should not consider it on appeal. We disagree. The record indicates that defendant moved for a judgment of acquittal on the grounds that the identification numbers had been changed on Counts 26, 29, 36 and 43, and that "there was a misidentification" in counts

---

[10] Under the 1993 amendment to ORS 161.635, Class B misdemeanors carry a maximum fine of $2,000, which was within the district court's jurisdictional limit under ORS 46.040 at the time of defendant's crimes.

[11] We emphasize that our analysis is confined to the unique facts of this case: Defendant did not move against the complaint before trial on jurisdictional grounds, and she was not *convicted* of any crime over which the district court lacked jurisdiction.

[12] Defendant apparently concedes that each count adequately described the particular animal defendant is alleged to have neglected. She claims, however, that there was insufficient *evidence* identifying which of the nearly 40 cats seized from her home were the ones referred to in those counts.

33 and 34. Defendant's argument on appeal is not "fundamentally different" from the one she made in the trial court, and the prosecutor had "ample opportunity" to respond to it below. *State v. Martin*, 135 Or App 119, 123, 897 P2d 1187 (1995).

We first determine whether each animal's identity is a material allegation. An allegation is material if, upon striking it, the charging instrument no longer states a crime. *State v. Russell*, 231 Or 317, 319, 372 P2d 770 (1962). In order to sufficiently charge a crime, an accusatory instrument must serve the following functions:

> " '(1) to inform the defendant of the nature of the crime with sufficient particularity to enable him to make his defense, (2) to identify the offense so as to enable the defendant to avail himself of his conviction or acquittal thereof if he should be prosecuted further for the same cause, and (3) to inform the court of the facts charged so that it may determine whether or not they are sufficient to support a conviction.' " *State v. Montez*, 309 Or 564, 596-97, 789 P2d 1352 (1990), *quoting State v. Cohen*, 289 Or 525, 529, 614 P2d 1156 (1980).[13]

Defendant was charged with criminal neglect of 57 different animals. Unless the complaint sufficiently identified the individual animal in each count, it would not satisfy the "particularity" requirements of *Montez* and *Cohen*. We conclude therefore that the identity of each animal is a material allegation that must be proven beyond a reasonable doubt.

We now examine whether there was sufficient evidence of identity on those six counts. In reviewing the sufficiency of evidence to support a criminal conviction, we must determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, viewing the evidence in the light most favorable to the state and drawing all reasonable inferences. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994).

To identify each animal seized, the state prepared "exhibits" consisting of a veterinarian's examination sheet

---

[13] We see no reason why an "information" or "complaint" should not serve the same functions as an indictment.

detailing the animal's physical condition and an identification number connecting each animal to a particular count of the complaint. However, the trial court excluded exhibits for Counts 26, 29, and 43 as lacking a proper foundation,[14] and the state did not offer an exhibit on Count 36. Without these exhibits, defendant argues, the evidence was insufficient to identify the individual animal in each count.

Count 36 alleged neglect of an "adult male Flame Point Siamese cat, white and apricot in color." Defendant claims that in the absence of the exhibits, the only evidence describing that animal was that it was "a cat." Count 29 referred to a "male, Seal Point Siamese kitten, dark brown and white with red tail." The only identification evidence offered on that animal, according to defendant, was that it was a *female* taken from a carrier containing 10 kittens of varying ages and color, with no other description offered. Count 26 alleged neglect of a "male Siamese kitten, dark tan and brown in color," but defendant claims there was no evidence describing it beyond the excluded exhibit. Count 43 described an "adult female Flame Point Siamese cat, tan and apricot in color." Evidence identifying that animal, defendant argues, consisted solely of testimony that the cat may have been female, but the witness was unsure.

The state, however, claims that other evidence in the record adequately identified those animals. As support, it cites testimony by a county veterinarian that *all* the animals seized from defendant's house suffered respiratory problems caused by the environment, and that he could tell from looking at a photograph of 10 kittens that those animals needed medical attention. We can neither confirm nor deny the state's characterization of that evidence, because the portions of the taped transcript cited by the state are unintelligible.[15] Furthermore, even if the veterinarian testified as such, that evidence does not identify *which* of the animals seized were the ones defendant is alleged to have neglected in Counts 26,

---

[14] Someone had altered the examination sheets on these counts, and the state offered conflicting evidence as to how those changes occurred.

[15] The state cites portions of side two on tape 940105-61. The second side of that tape, however, contains only sounds of a recording played backwards. The recording on side one, though intelligible, does not contain the testimony to which the state refers.

29, 36 and 43. The state cites no other evidence connecting a specific animal to those specific charges. We therefore agree with defendant that there is insufficient evidence from which a rational factfinder could identify the animals in Counts 26, 29, 36 and 43 beyond a reasonable doubt, and hold that the trial court erred in failing to grant defendant's motion for judgment of acquittal on those particular counts.

Defendant next argues that the evidence offered to identify the animals in Counts 33 and 34 materially varied from the allegations in the complaint. In both counts, the complaint identified the animals as "adult" cats while the state's witnesses described them as "kittens." The state contends that the animals' *age* is not a material allegation, and even if it is, the variance between the allegation and proof is not material. We agree.

An allegation is material if, upon striking it, the charging instrument no longer states a crime under the statute the defendant is accused of violating. *Russell*, 231 Or at 319. In *Russell*, the indictment alleged theft of a "yearling Hereford heifer," while the evidence showed theft of a steer. 231 Or at 318. "Heifer" was a material allegation because when that word was stricken, the indictment no longer stated a crime under the livestock-theft statute the defendant was alleged to have violated. *Id.* at 319. *Former* ORS 164.380, *repealed by* Or Laws 1971, chapter 743, section 432, explicitly punished theft of a "heifer," but did not list "yearling" or "Hereford" among the animals covered. *Id.* at 318-19.

Here, Counts 33 and 34 each alleged neglect of an "adult female Siamese mix, tan and brown in color." Unlike *Russell*, on striking the word "adult," each count still states a crime under ORS 167.325, which merely prohibits neglect of "an animal." Moreover, the remaining descriptive terms satisfy the "particularity" requirements of *Montez* and *Cohen*. The age of the cats is therefore not a material allegation.

Furthermore, even if it were, any discrepancy between the evidence and complaint is not material. When defendant claims a variance between the proof and the allegations in the charging instrument, the test is whether the charging instrument misled the defendant and prejudiced her in the preparation of her defense. *State v. Swanson*, 90 Or

App 543, 546, 753 P2d 431 (1988); *State v. Mustain*, 66 Or App 367, 371, 675 P2d 494, *rev den* 297 Or 83 (1984). Defendant does not explain how she was prejudiced. She was charged with neglecting 57 different animals. Her defense theory on Counts 33 and 34, as with many of the other charges, was not dependent on the particulars of those allegations. She instead relied on a general defense—*i.e.*, that her house was not in the condition depicted by the state and that her animals had not been neglected. We fail to see how the discrepancy in age as to these two cats misled defendant in the preparation of her defense.[16] The trial court did not err in denying the motion for judgment of acquittal on Counts 33 and 34.

Convictions for animal neglect in the second degree on Counts 26, 29, 36 and 43 reversed; otherwise affirmed.

---

[16] Defendant's reliance on *State v. Russell*, 231 Or 317, 372 P2d 770 (1962), is misplaced. There, the Supreme Court found a material variance where the indictment alleged theft of a heifer and the proof showed theft of a steer. 231 Or at 321. The holding in *Russell*, however, turned on the underlying theft statute, *former* ORS 164.380, which listed five separate classes of livestock. *Id.* at 318. Because the state chose to prosecute the defendants under a statute that distinguished "heifer" from "steer," it was bound to prove what the indictment alleged. *Id.* at 321. Here, however, ORS 167.325 does not classify animals according to age but instead prohibits the neglect of "an animal."