LAGESEN, P. J.
*553 Petitioner appeals a judgment denying his petition for post-conviction relief from his conviction for aggravated theft. He contends that the post-conviction court erred by rejecting his claim that his trial counsel rendered constitutionally inadequate and ineffective assistance of counsel, in violation of his rights under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution when counsel did not competently contest the admissibility of out-of-court statements by his nephew implicating him in the crime. We agree. We therefore reverse and remand for entry of judgment granting the petition for post-conviction relief.
The parties do not dispute the pertinent facts. We therefore review the post-conviction court's denial of relief for legal error. Green v. Franke , 357 Or. 301, 312, 350 P.3d 188 (2015).
The facts are as follows: A 414-pound metal furnace coil disappeared from a graphite manufacturing company. Police located the coil at a metal recycling company. That company reported that it had purchased it from a woman, Ephrem. Ephrem, in turn, told police that the coil came into her hands via a sale from someone named Nate and someone named Virgil (petitioner's first name). She described the person named Virgil as a 45- to 50-year-old white male who was 5'8? tall, "real skinny, sick looking" with "salt and pepper hair" that was "stringy." (Petitioner was a little younger and not aptly described as "real skinny.") Ephrem said that "Virgil" used a phone that he said belonged to his girlfriend, "Tula," that he drove a white compact pickup, and that Ephrem had contacted him at an address on Foster Road in Damascus, which she gave to police. (Petitioner had a girlfriend named Tula and drove a blue-and-silver pickup. The address in Damascus belongs to petitioner's family.) When shown a photograph of petitioner, Ephrem thought that petitioner could be the "Virgil" who had sold her the coil, but was not sure. Ephrem easily identified the person named "Nate" in a photograph.
The investigating detective, Storagee, went to the address that Ephrem provided. There, he met petitioner's *554 father (also named Virgil), petitioner's sister, petitioner's brother-in-law, and petitioner's nephew, Miller. When Storagee interviewed Miller, Miller told Storagee that "he had helped [petitioner] and two women load a large copper ring and some * * * five-foot-long pieces of stainless steel pipe into his truck" around the time the coil went missing from the graphite manufacturing company.
Petitioner was charged with aggravated theft. He waived a jury and was tried in a bench trial. Ephrem testified and identified petitioner in court as the person who had sold her the coil, although she acknowledged that he did not much resemble the description she previously had given. Miller could not recall either the incident or his statements to Storagee, apparently because of the effect of a prior head injury on both his long-term and short-term memory. The state then sought to admit, through Storagee's testimony, Miller's previous statements about assisting petitioner in loading the copper ring into the truck. Petitioner's trial counsel raised a hearsay objection, to which the trial court responded, "Well, haven't we sort of established that the previous witness has no clue?"[1] Agreeing with that point, trial counsel *740 did not pursue the objection any further, and Miller's out-of-court statements were admitted. The prosecutor relied on the evidence in closing argument, noting that, in addition to the circumstantial evidence pointing to petitioner and Ephrem's in-court identification,
"[w]e additionally get testimony, though it had to come third hand through the officer, from Mr. Miller that [petitioner] had specifically asked him to load up a piece of metal onto his truck in the time frame that we're talking about. And there's no question that this is [petitioner]."
*555 The prosecutor emphasized Miller's statements again in rebuttal, arguing that "[w]e have Mr. Miller's testimony in full," and that "we have Jacob Miller saying, 'This is his truck, and this is his house, and I helped him with a coil about a month and a half ago.' "
The trial court found petitioner guilty. Although the court found that there were "issues" with Ephrem's in-court identification and did not rely on it, the court explained that there "would have to be remarkable coincidences for this to be * * * anybody other than [petitioner]." It noted that Miller's statements pulled the circumstantial evidence together:
"Mr. Miller's earlier statement ties things in. I don't think there's any reason to find that the statement he gave to the officer is questionable in terms of his memory. I mean, you can be pretty severely impaired and still know who your uncle is.
"So I don't have a problem with-you know, I mean, obviously Mr. Miller has some issues. He's working on them. I hope things are going well for him. I don't find those problems, either in terms of the head injury or the drug abuse history, to be such that I wouldn't place some confidence in the statements he made to the officer back when the officer came and talked to him not all that long after all this happened, the fact that he's unable or unwilling to remember any of that now, not persuasive to me that he didn't accurately remember it when he gave the account to the officer."
After an unsuccessful appeal, petitioner initiated this post-conviction proceeding. Petitioner alleged, among other things, that he was entitled to relief based on his trial counsel's failure to adequately contest the admissibility of Miller's out-of-court statements implicating petitioner in the theft of the coil, asserting that it was "inadmissible hearsay" and that competent counsel "would have objected to the trial court's use of that testimony as substantive evidence upon which to convict petitioner." The trial court denied relief. As we-and the parties-read the court's written ruling, the court determined that trial counsel performed deficiently in contesting the admissibility of Miller's out-of-court statements, and that the evidence was inadmissible and should have been excluded, but that the admission of the evidence *556 did not prejudice petitioner because the evidence was, in its view, "only a minor factor" in the court's finding of guilt:
"The attorney objected to Miller's testimony but backed down when the judge indicated that he was going to allow it. The testimony was not admissible. The court made a speaking ruling and listed all of the factors showing guilt. Miller's testimony was only a minor factor. This court finds no prejudice."
On appeal, petitioner argues that the post-conviction court erred when it concluded that petitioner was not prejudiced by trial counsel's failure to effectively challenge the admissibility of Miller's out-of-court statements implicating him in the theft of the coil. In response, the state does not challenge the post-conviction court's conclusion that the *741 statements were not admissible as substantive evidence, and its related conclusion that competent counsel would have demonstrated to the trial court why the statements were not admissible, beyond simply raising a hearsay objection. Instead, the state argues that the trial court's speaking verdict demonstrates that Miller's statement's played such a small role in the trial court's finding of guilt that we can be confident that the court would have made the same finding even if those statements had been excluded, such that trial counsel's deficient performance did not prejudice petitioner. In support of that proposition, the state points our attention to the direct appeal case of State v. Hunter , 141 Or. App. 73, 918 P.2d 104, rev. den. , 324 Or. 78, 921 P.2d 968 (1996). In that case, we concluded that the erroneous admission of evidence at a bench trial was harmless where the trial court's speaking verdict indicated that, although the court had placed some weight on the disputed evidence, it relied "primarily" on other evidence. Id . at 77 & n. 6, 918 P.2d 104. The state suggests that this case, like Hunter , is one in which the trial court's explanation of its decision demonstrates that it relied primarily on evidence other than the contested evidence, so as to preclude the conclusion that petitioner was prejudiced by the erroneous admission of that evidence.
Under Article I, section 11, a post-conviction petitioner is entitled to relief from a conviction on the ground of inadequate assistance of trial counsel if the petitioner demonstrates two things: (1) that trial counsel failed to exercise *557 reasonable professional skill and judgment; and (2) that that deficiency in performance prejudices the petitioner. Green , 357 Or. at 312, 350 P.3d 188. For purposes of this appeal, it is uncontested that petitioner's trial counsel performed deficiently in contesting the admissibility of Miller's out-of-court statements. The issue before us is the correctness of the post-conviction court's determination on the prejudice element of petitioner's claim. That requires us to assess whether "the deficient performance could have affected the outcome of the case." Maxfield v. Nooth , 278 Or. App. 684, 688, 377 P.3d 650 (2016) (emphasis in original). The "standard demands more than mere possibility, but less than probability" that trial counsel's deficient performance affected the outcome of the case. Green , 357 Or. at 322, 350 P.3d 188.
Here, the trial court's speaking verdict, when considered in its entirety in the context of the whole record, belies the post-conviction court's conclusion that Miller's statements were such a "minor factor" in the court's decision that there is no more than a "mere possibility" that the admission of the statements affected the outcome of the case. That is, the evidence could have affected the court's decision. The state specifically pointed the court's attention to Miller's statements in its arguments, for understandable reasons. Miller, after all, was petitioner's nephew, someone likely to recognize his own uncle, an observation that the trial court made expressly. The state's arguments resonated with the court. It specifically remarked that it thought Miller's statements "tie[d] things in" and found them to be accurate. The only other witness directly linking petitioner to the coil was Ephrem, and the trial court found her in-court identification too problematic to take into account. The other evidence against petitioner was circumstantial. Although a number of those circumstances pointed strongly toward petitioner-the name, the address, the girlfriend's unusual name-some pointed a different direction entirely. Ephrem initially was not able to identify petitioner as the Virgil she dealt with when she was shown petitioner's photograph, and her description of the person she knew as Virgil did not bear much resemblance to petitioner's appearance at the time of trial or in photographs from earlier times-Ephrem herself admitted as much at trial.
*558 Those circumstances demonstrate that Miller's statements played a not-insubstantial role in the trial court's verdict, such that if trial counsel had performed competently and secured their exclusion, the trial court could have reached a different conclusion regarding petitioner's guilt. This case is unlike Hunter , on which the state relies, because, when the trial court's speaking verdict is considered as a whole, it cannot be said that the court relied "primarily" on other evidence; Miller's statements tied the case together, *742 in the court' view. Further contrasting this case from Hunter is the fact that the contested evidence in this case was not duplicative of other evidence that had been admitted without objection, a fact that made the disputed evidence in Hunter unlikely, on its own, to have affected the verdict. Petitioner, therefore, was prejudiced by trial counsel's deficient performance.
For those reasons, we conclude that petitioner is entitled to post-conviction relief on his conviction for aggravated theft on the ground that he received inadequate assistance of counsel in violation of Article I, section 11. Having determined that petitioner is entitled to post-conviction relief under our state constitution, we need not address petitioner's contention that he is entitled to relief under the federal constitution.
Reversed and remanded with instructions to grant petitioner post-conviction relief on his conviction for aggravated theft.

The trial court's statement that it had been established that Miller had "no clue" suggests that the court determined that Miller's lack of memory made him unavailable to testify to the events that he had previously reported to Storagee for purposes of OEC 804, which allows for the admission of certain types of out-of-court statements for their truth if the declarant is "unavailable" because the declarant "[t]estifies to a lack of memory of the subject matter of a statement." OEC 804(1)(c). But not all out-of-court statements become admissible for their truth as a result of the declarant's unavailability, and Miller's out-of-court statements to Storagee do not fall within the categories of statements that OEC 804(3) makes admissible if the declarant is unavailable. Trial counsel did not call the court's attention to its apparent misunderstanding regarding what types of out-of-court statements are made admissible by a declarant's unavailability to testify about the subject matter of the statements.