***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Argued and submitted October 28, 2020, affirmed November 2, 2022, petition
for review denied February 9, 2023 (370 Or 740)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROSALIO S. CARBAJAL,
aka Rosalio Carbajal,
*Defendant-Appellant.*

Marion County Circuit Court
16CR80620, 18CR32828;
A169051 (Control), A169052

Audrey J. Broyles, Judge.

Denny Maison argued the cause and filed the brief for appellant.

Patrick M. Ebbett, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

Defendant appeals from a judgment of conviction, after a bench trial, for first-degree sexual abuse, ORS 163.427 (Case No. 16CR80620), and failure to report as a sex offender, ORS 163A.040 (Case No. 18CR32828).[1] Defendant's assignments of error relate only to the conviction and sentencing in Case No. 16CR80620. Defendant challenges the trial court's ruling, on the state's motion *in limine*, admitting evidence of defendant's prior conviction for third-degree sexual abuse. He also assigns error to his sentence on the sexual abuse conviction of 75 months' imprisonment under ORS 137.700 (Ballot Measure 11 (1994)), over his constitutional proportionality challenges, relying on *State v. Rodriguez/ Buck*, 347 Or 46, 217 P3d 659 (2009), and *State v. Ryan*, 361 Or 602, 396 P3d 867 (2017). We have considered and reject defendant's assignment of error on his sentence without discussion and write to address his challenge to the trial court's evidentiary ruling. We conclude that, even assuming that the trial court erred in admitting the evidence, any such error was harmless, and we therefore affirm.

Defendant's first-degree sexual abuse conviction stems from his alleged conduct toward his then-four-year-old grand-niece. In a motion *in limine*, the state had sought to introduce a certified copy of defendant's 1996 conviction of third-degree sexual abuse, entered after a plea of guilty, which involved defendant touching the breasts and genital area of his then-16-year-old daughter, under the guise of determining whether she was sexually active.

As a theory of defense, defendant intended to present evidence that, because of defendant's prior conduct toward his daughter, people watched defendant around children; thus, he could not have had the opportunity to commit the charged act. Defendant nonetheless objected to the state's motion *in limine* to admit a certified copy of the 1996 conviction as well as any mention of its circumstances.[2]

---

[1] Defendant does not raise any assignments of error directed at his conviction in Case No. 18CR32828 for failure to report as a sex offender, to which he pleaded guilty.

[2] Although there is some confusion in the transcript, we understand defendant to have maintained his objection when defense counsel argued:

Defendant objected based on relevance, due to the age of the prior conviction and the different facts. He also contended that the evidence was unduly prejudicial under OEC 403. The trial court ruled from the bench at the hearing that the evidence was relevant and that its relevance was not outweighed by its prejudicial impact. In the order granting the state's motion, the trial court ordered the parties to "prepare a stipulation of fact for evidence of the conviction."

At trial, defense counsel made the initial reference to defendant's prior conviction in his opening statement, which, in its entirety, consisted of the following:

> "As sort of touched on in the earlier motion *in limine* regarding the prior conviction of [defendant], you're going to find there's evidence that people were watching him because they were concerned about him. This was in a, you're going to find out, a very open area and there were lots of people around watching him and it could not have happened. And for that reason, at the end we will ask you to find [defendant] not guilty."

In its case-in-chief, the state presented evidence that the victim, who was age four at the time of the offense, had been brought by her aunt to a family birthday party, where 20 to 30 people were in attendance. The party was at the home of defendant's wife, from whom he was then separated. The victim, who was age 10 at the time of trial, was the state's first witness, and she described the circumstances of the assault. She testified that, at the party, she was sitting on a couch in the living room watching television. She remembered that her aunt, who had been sitting with her, was no longer in the room and was in the adjacent kitchen. There were other children in the room, but they were a distance away. The victim remembered that she was wearing a pink fluffy dress with a rose on it and black leggings. The victim testified that defendant, whom she recognized as her grandmother's brother but did not know well, came and sat next to her. He did not say anything to the victim and after a few minutes began to use his hand to rub

---

"As I indicated in chambers, if the Court is going to allow in the conviction, we object to the actual piece of paper, which I guess is now marked Exhibit 1, there's far too much information and ultimately completely irrelevant and also prejudicial to [defendant] for the piece of paper to come in."

her genital area (described by the victim as "the inappropriate spot" or "private area") through the leggings. After he stopped touching her, defendant warned the victim not to tell or "he'd do worse." The victim testified that she knew that what defendant did was wrong and that she was scared but that, because of what defendant said, she did not disclose the abuse to her parents until some four years later.

The state called the aunt to testify. The aunt recalled that she had been sitting on the couch with the victim but then went into the adjacent kitchen. The aunt testified that, as they were sitting down to the meal, the victim asked the aunt where she should sit. Defendant had an empty chair next to him and offered it to the victim, but the victim chose to sit on her aunt's lap.[3] The prosecutor did not ask the aunt any questions relating to defendant's prior conviction.

In his first question of the aunt on cross-examination, defense counsel asked:

"Q.   You know that [defendant] has had some issues in the past relating to his daughter?

"A.   Relating with her daughter? Yes—

"Q.   With his daughter."

The questioning continued:

"Q.   So you were concerned about him being with children?

"A.   Being with children.

"Q.   Him being alone with children.

"A.   If I knew that he was alone with children? I knew that he was around children.

"Q.   Would you allow him to sit alone with children—

---

[3] The aunt testified:

"When we're sitting down, there's the table's like this and there's two people on this side, so I was sitting here, and then there was [defendant] kind of across from me and there was a chair beside him, so when she came, she's like 'Where do I sit, auntie?' and I'm like 'Mm,' and then [defendant] pulled the chair and said, 'Here's one,' but gave her a look, straight look to her face, and then [the victim] turned to me, just opened her eyes, and I'm like 'Or you can sit here on my lap, sweetie, if you want,' and she's like, and I'm like 'Okay, come and sit on my lap,' so she came, sat on my lap, and we ate[.]"

"A.   I wouldn't, I myself wouldn't.

"Q.   So you're watching him to make sure that doesn't happen?

"A.   Well, I don't watch him, but if I have a child under my care, I do my best.

"Q.   You watch the child?

"A.   Yes.

"Q.   Okay. And make sure I understand, you never saw him sitting on a couch with her—

"A.   Correct[.]"

Subsequently, in its case-in-chief, the prosecution referred to defendant's prior conviction three times. After defense counsel's cross-examination of the victim's aunt, the state called the victim's mother. The prosecutor asked the victim's mother if she knew of defendant's "prior conviction for sexual assault." She testified that she did know of the conviction and would not have let the victim attend the party if she had known that defendant would be there. The state called as witnesses two detectives who had investigated the allegations against defendant. The prosecutor asked one detective if he had information that defendant "had previously been convicted of a similar sexual misconduct"; he asked the other detective if he had heard defendant acknowledge the circumstances of his prior conviction. Both witnesses answered affirmatively.

Defendant called two witnesses, his wife and daughter. In questioning defendant's wife, counsel inquired about defendant's prior "problem" with their daughter:

"Q.   Way back when about 20 years ago, did [defendant] have some problem with your daughter?

"A.   Yes.

"Q.   And up until that point in his life, was he drinking alcohol?

"A.   Twenty years ago?

"Q.   Yes.

"A.   Yes, sir.

"Q.  Probably too much?

"A.  Well, yeah, he did drink.

"Q.  Has he, to your experience and knowledge, had anything to drink for essentially the last 18, 20 years?

"A.  Never.

"Q.  As part of what he did as a result of what happened with your daughter, right, he stopped drinking.

"A.  Yes.

"Q.  This is about that time when [defendant] and you started living apart?

"A.  No, we've been separated for about 13 years—

"Q.  Okay. Were you concerned about [defendant] being around children?

"A.  No.

"Q.  Even with what happened with your daughter?

"A.  No."

On recross-examination, the prosecutor questioned defendant's wife:

"Q.  But you would not remember the defendant sitting on the couch with any kid because that doesn't cause you concern, correct?

"A.  No, I don't remember his being sitting with any children.

"Q.  Okay. But that wouldn't cause you concern even if you did see it, correct?

"A.  No.

"Q.  And that is true even though he's been convicted of sexually abusing your daughter.

"A.  It isn't—it isn't as though I'm defending him, but it's been so many years since he used—he used to drink, and he did used to drink way back then."

In closing argument to the court, the prosecutor emphasized the victim's credibility, noting that she remembered details, that she had been careful and consistent in her description of the details both in her testimony and to investigators, and that she had no motive to fabricate the

abuse. In closing argument, the prosecutor made no reference to defendant's prior conviction.

Defense counsel argued during closing argument that there were too many inconsistencies in the evidence to find that the state had met its burden beyond a reasonable doubt. Defense counsel did make a brief reference to defendant's prior conviction, noting the victim's aunt's testimony that,

> "not only because of [defendant's] past, but ultimately just because she's a concerned adult in charge of a four-year-old, that she was always paying attention to [the victim], making sure that she was safe[.]"

Thus, to summarize, defense counsel made reference to defendant's "prior conviction" in his opening statement, and then obliquely ("some issues in the past"; "some problem"; "what happened"; "[defendant's] past") in cross-examination of the victim's aunt, in direct examination of defendant's wife, and in closing argument. After defense counsel referred to the prior conviction in his opening statement and in the questioning of the victim's aunt, the state made inquiries about the prior conviction of three different witnesses in its case-in-chief.

In ruling from the bench that the state met its burden, the court noted that it had taken copious notes and gave a summary of the evidence, primarily emphasizing the victim's testimony. Importantly, the court found the victim's testimony to be truthful and persuasive. The court's reasoning leads us to conclude that the court placed greater weight on the accuracy of the victim's memory than on inconsistencies in testimony from other witnesses. The court explained that, although the circumstances of the assault may not have been known to the adults and, for that reason, were inconsequential to them, they were not inconsequential to the victim. The court summarized in detail the victim's testimony and then concluded, "I believe [the victim], I believe her testimony today."[4] In its summary of the evidence, the

---

[4] The court explained its credibility determination in detail:

"She didn't embellish, she didn't try and make it seem worse, she was clearly very not comfortable being here, but I believe that she really understood what her job was, which was to tell the truth, and she didn't try and make it worse or better. She knows that she has half of her family or more

court made no reference to defendant's prior conviction or to the circumstances of that conviction.

On appeal, defendant assigns error to the trial court's admission of evidence of defendant's prior conviction. Defendant contends that evidence of the prior conviction was not relevant because of its age and circumstances. Defendant further contends that the trial court failed to properly conduct balancing under OEC 403, because it did not identify whether the evidence was admissible for a propensity or a nonpropensity purpose. Additionally, defendant contends that any error in admitting the evidence was not harmless under Article VII (Amended), section 3, of the Oregon Constitution or under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, because the primary issue at trial was the victim's credibility, and the evidence of defendant's prior conviction could have bolstered the trial court's assessment of that credibility.

We conclude that, even assuming the trial court erred, any error in admitting the challenged evidence was harmless. As an initial matter, the state referred to defendant's prior conviction only after defense counsel had previously made reference to it. *Compare State v. McGinnis*, 335 Or 243, 250, 64 P3d 1123 (2003) ("When a defendant testifies, however, and admits the substance or truthfulness of the matters contained in the erroneously admitted evidence, the facts established by the in-court admissions may eliminate any harm associated with the erroneously admitted evidence."), *with McCathern v. Toyota Motor Corp.*, 332 Or 59, 70, 23 P3d 320 (2001) (explaining that a party has the right to meet its opponent's evidence admitted under the trial court's ruling without waiving the evidentiary

---

that are against her, that have alienated she and her family, so for her that has to be very difficult, but I believe her, I believe that [defendant] did touch her inappropriately and that it was her—that it was a sexual or intimate part and that it was for—that it was sexual contact, and frankly, right, the other witnesses are, you know, to some extent helpful, but really what it comes down to is if there's one witness that the Court or the jury believes, that's sufficient to prove any fact in dispute, so I'm weighing the evidence, I'm looking at what was said by everyone, I'm looking at the statements that the defendant made to the investigators and what [the victim] said and what her mom and her aunt and what [defendant] said and [defendant's] daughter said, and I believe [the victim], and so I believe that it occurred and I am satisfied beyond a reasonable doubt that the State has proven that charge."

objection for purposes of appeal). Here, defendant's theory of the case, as described above, was that people were watching him because of his prior conduct toward his daughter. And, as we have described, the state's references to the prior conviction were brief, without the details that defendant contends were inflammatory. The state's references to defendant's former conviction were no more prejudicial in a trial to the court than defendant's own cryptic inquiries of witnesses concerning defendant's prior "problem" or "issues" with his daughter, which put the same conviction before the court.

Moreover, any error in the admission of the evidence was harmless for the additional reason that the trial court's speaking verdict shows that the prior conviction played little, if any, role in the trial court's determination of guilt. Contrary to defendant's contention, we conclude that the trial court did not base its determination of the victim's credibility or defendant's guilt on the fact of defendant's prior conviction. In its speaking verdict, the trial court explained in detail why it believed the victim and the court made no mention of the prior conviction. Although it is true that "a trial court's failure to mention contested evidence when explaining its disposition does not necessarily establish that any error in admitting that evidence was harmless," *State v. Klontz*, 257 Or App 684, 702, 308 P3d 214 (2013), it is clear from the trial court's speaking verdict in this case that it based its verdict almost exclusively on its assessment of the victim's credibility and its belief in her testimony. Indeed, the trial court emphasized that basis for its verdict at sentencing, telling defendant that the court "found [the victim] to be particularly credible and genuine and extremely believable," and that the court believed the victim "a hundred percent." *See State v. Reed*, 299 Or App 675, 693-94, 452 P3d 995 (2019), *rev den*, 366 Or 382 (2020) (relying on the trial court's comments at sentencing in addition to the speaking verdict in concluding that the alleged error was harmless in a bench trial). Thus, the trial court's speaking verdict, combined with its comments at sentencing, persuade us that any error in admitting evidence of defendant's prior conviction had little likelihood of affecting the trial court's verdict. *See, e.g.*, *Klontz*, 257 Or App at

702 n 6 (explaining that the trial court's comments at sentencing supported the conclusion that any error in admitting other-acts evidence in a bench trial was harmless where the trial court did not reference evidence in discussing the guilty verdict and stated that the verdict was primarily based on the victim's testimony); *State v. Hunter*, 141 Or App 73, 77, 918 P2d 104, *rev den*, 324 Or 78 (1996) (in a bench trial, admission of challenged evidence was harmless where the trial court "relied primarily" on other evidence in reaching its verdict and similar evidence was admitted without objection).

Affirmed.