Argued May 13, affirmed July 24, petition for
rehearing denied September 5, 1969

STATE OF OREGON, *Respondent, v.*
SHARON CARLENE CAFARELLI,
*Appellant.*

456 P2d 999

*Jack E. Collier,* Portland, argued the cause and
filed a brief for appellant.

*Jacob B. Tanzer,* Assistant Chief Deputy District
Attorney, Portland, argued the cause for respondent.
With him on the brief was George Van Hoomissen,
District Attorney, Portland.

Before PERRY, Chief Justice, and MCALLISTER,

SLOAN, O'CONNELL, GOODWIN, DENECKE[*] and HOLMAN, Justices.

## SLOAN, J.

Defendant was convicted, in a trial without a jury, as an accomplice to the first degree murder of her husband. The killing was committed by her 17-year-old paramour, James McIntire. The state charged that defendant conspired with McIntire to commit the murder. On appeal defendant claims that there is insufficient evidence to establish a conspiracy and that her motion for a judgment of acquittal should have been allowed.

Defendant's husband was employed as a trainman. When his work took him away from home at night his place was frequently occupied by others, the last favorite being McIntire. The actual killing occurred on an occasion when the victim returned from an overnite run. McIntire was with defendant when Cafarelli got home. McIntire attacked Cafarelli there and wounded him to some extent. McIntire, who was much larger and stronger than his victim, then put Cafarelli in a car and took him to a wooded area east of Portland. There Cafarelli was killed by blows to the head apparently delivered by a rock. His body was found several days later.

There was direct evidence that defendant sustained a continued hatred for her husband and had expressed the wish that he were dead. There was direct evidence that for two or three weeks prior to the killing McIntire had plotted Cafarelli's death. He had enlisted the help of another young man named

---

[*] Denecke, J., did not participate in the decision of this case.

Morrison. Morrison testified that McIntire told him that McIntire would receive money and a motorcycle for the act. Morrison also testified that some of the plotting was done in defendant's presence and with her participation. On two prior occasions Morrison and McIntire had gone to the railroad yards in an attempt to find Cafarelli and kill him there to foster the idea that Cafarelli had been robbed and killed.

After the attack on Cafarelli began in the Cafarelli house and McIntire had taken him away, defendant called Cafarelli's place of employment and reported he had not come home. She repeated these calls and later the same morning called the sheriff's office to report her husband as a missing person. She told friends and investigating officers that her husband had never returned from work on the day that he disappeared.

Laboratory tests of bloodstains on a carpet in the house disclosed that it would have required about 16 ounces of blood to have made the stains. The tests also demonstrated that the rug had been cleaned with a bleaching solvent. Later, when confronted with the bloodstains, defendant told varying stories to explain them. At one time she had said that her husband had come home and that he had been beaten by McIntire and Morrison and a third person named Mason. She testified in court that McIntire fought with her husband at the house and that the two men left the house to take Cafarelli to the hospital and that the next she heard was that her husband's car had been found near the place where his body was later discovered. She testified that she had not informed the police of these facts because she had been threatened by McIntire and was afraid. She gave the same ex-

cuse for her telephone calls, on the day of the killing, in which she had falsely stated that Cafarelli had never returned home from work.

■ The trial court found that defendant had plotted to kill her husband and after the event had striven to conceal the evidence. The evidence, both circumstantial and direct, sustain this finding. There was no merit in the motion for a directed verdict.

■ There are other assignments directed at the introduction of evidence. In a trial to the court we can assume that any questionable evidence would be disregarded. There is no indication that the court relied on the evidence in reaching the verdict of guilty. There was no need to rely on the questioned evidence. *State v. Voshell,* 1967, 247 Or 534, 430 P2d 1010; Annotation 116 ALR 558.

Affirmed.