Argued October 21, affirmed December 13, 1976

STATE OF OREGON, *Respondent,*

*v.*

JOSEPH R. SHIPP, *Appellant.*

(Nos. 45271 & 47542, CA 6702)

557 P2d 244

*Robert C. Cannon,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary Babcock, Public Defender, Salem.

*Donald L. Paillette,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Tanzer and Richardson, Judges.

RICHARDSON, J.

## RICHARDSON, J.

Defendant appeals his conviction for first degree burglary, ORS 164.225.[1] In a separate appeal, consolidated for hearing, defendant challenges revocation of his probation granted in a prior case. He assigns three specifications of error relating to the burglary conviction: (1) the admission of extrajudicial statements made by the codefendant, (2) the admission of testimony from the owner of the burglarized grocery market concerning items missing from inventory, and (3) denial of his motion for judgment of acquittal based on the sufficiency of the evidence to sustain the charge.

Respecting revocation of his probation he argues it was based on the burglary conviction and if that conviction is set aside revocation of his probation must be reversed.

The matter was tried to the court without a jury. David Phillips and defendant were jointly indicted for burglary of a grocery store. At approximately midnight a witness observed two persons dressed as males with shoulder length hair in the alley behind the burglarized market putting some boxes in the trunk of a "little blue car." The witness memorized the license number of the car[2] and gave the information to the police at approximately five to ten minutes after midnight. The investigation disclosed a padlock on the rear door of the store had been cut. The challenged

---

[1] "(1) A person commits the crime of burglary in the first degree if he violates ORS 164.215 and the building is a dwelling, or if in effecting entry or while in a building or in immediate flight therefrom he:

   "(a) is armed with a burglar's tool as defined in ORS 164.235 * * *
   "* * * * *"

The indictment alleged the defendants, during commission of the burglary "were armed with a burglar's tool, to-wit: a pair of bolt cutters * * *."

[2] In his haste he transposed two of the digits of the license number. He later that morning identified the car when it was impounded by the police.

testimony of the store owner indicated two to four cases of Olympia beer were missing.

The police located the "little blue car" about 1:10 a.m. at a residence four or five blocks from the market. The car's engine was still warm. A party involving a number of people, including both defendants, was in progress at the residence where Olympia beer, among other brands, was being consumed. Defendant and Phillips had shoulder length hair as did several other males at the party. Phillips admitted the car was his and allowed the police to search the trunk and interior; they located a pair of bolt cutters which an expert testified was used to cut the lock on the market door.

Phillips was taken into custody and interviewed by a police officer. He made the following statements challenged in the first assignment of error:

"THE WITNESS: [Officer Whinney] * * * I then asked Mr. Phillips if he was driving this car and he said, 'Yes'. I then asked him if he had gone right to the party and he said, 'No', I then asked him where he was and he said he didn't know, I believe that was about all I asked, he didn't want to answer anymore questions after that."

The burglary investigation first focused on defendant two or three weeks later. Following a stop for a traffic violation he was interviewed by the same officer who had questioned Phillips. He was asked "* * * if he had been with Mr. Phillips and he stated 'yeah' that he had left Phillips' mother's place and had 'cut a gut' around town and went to the party." In addition defendant told the police he and Phillips were at the party a short time before the police arrived. At trial defendant testified they had gone to the party "two or three hours" before the police arrived. David Phillips' mother testified her son and the defendant left her residence with the car about 10:30 or 11 p.m.

■ Assuming, arguendo, the statements of Phillips to the police were inadmissible we agree with the states contention it was harmless error, Or Const, Amended Art VII, § 3; ORS 138.230. *State v. Van Hooser,* 11 Or

App 146, 501 P2d 78 (1972), *aff'd* 266 Or 19, 511 P2d 359 (1973); *State v. Bishop,* 7 Or App 558, 492 P2d 509 (1972).

The Oregon Supreme Court, in *State v. Van Hooser, supra,* interpreted the constitutional provision and set forth two criteria for use in complying with the constitutional mandate. The appellate court can affirm despite error if (1) there is substantial evidence of guilt and (2) that the error was unlikely to have changed the result of the trial.

Admittedly the evidence was circumstantial, however, as indicated further in this opinion, it was sufficient to sustain a verdict of guilty. A primary consideration is whether, as a practical matter, there is a likelihood the result would have been changed if the evidence objected to had been excluded. We think the result would not have been different.

Phillips' statement to the police did not directly incriminate defendant and was ambiguous as to the length of time between departing his mother's house and arriving at the party. Defendant's statement to the police was not materially different from that given by Phillips. He stated they left with the car, "cut a gut" through town and went to the party and were there a short time before the police arrived. The statement is equally ambiguous regarding the time factors. At trial defendant testified they left Phillips' mother's house, drove around about 20 minutes and then went to the party. He testified he never left the party and did not know if Phillips left after they arrived. The trial judge's statement in summing up the evidence preparatory to announcing a verdict discloses no dependence on Phillips' statement in reaching a finding of guilty. Excluding Phillips' statement there was essentially the same information presented by way of other evidence. The cumulative effect of the codefendant's statement could have had little, if any, effect on the outcome.

Defendant's second assignment of error challenges as hearsay the testimony given by the owner of the burglarized market concerning the items that were missing after the burglary. The testimony is as follows:

"Q  [prosecutor] Some time after this burglary break in had occurred were you able to determine what was missing from the warehouse?

"A  Well, we felt we were able to because of the delivery date —

"MR. LEWIS [Defendant's counsel]: I object, Your Honor, in that if the witness is going to testify about what he personally knows, from his observations, fine, but if it has to do with others we are then denied cross examination. May I ask some questions in aid of an objection, Your Honor?

"\* \* \* \* \*

"MR. LEWIS: Mr. Naeve, do you have any personal— from your own physical observation of your inventory any personal knowledge as to what was missing other than a feeling?

"THE WITNESS: I did.

"MR. LEWIS: Have you personally conducted an inventory either before or after?

"THE WITNESS: We keep a running inventory on all the beer all the time. Also the distributor keeps an inventory on the buildup that they leave, which they were there on that day in the afternoon.

"MR. LEWIS: Then, it is correct, that the conclusions that you drew were based on telephone calls to suppliers and conversations with your employees and other things?

"THE WITNESS: I called to see if they had the regular buildup, what our inventory was at the time they were there and the inventory that was there that morning, the preceding morning after it happened.

"\* \* \* \* \*

"MR. BITTERTON:  Q Were you able to examine the inventory records there at your store?

"A  Yes, we have them.

"Q  From those records were you able to determine

[ 680 ]

"A    That there had been Olympia beer taken from the cooler in the amount of probably two half cases of Olympia bottles, which there are 12 packs, from two to four not to exceed four but not less than two. So, that's pretty close to the inventory I think."

The basis of defendant's objection was that the store's owner was testifying to statements or opinions given him by the beer supplier concerning his "regular buildup" of beer in the warehouse, and this was inadmissible hearsay.

The witness testified he determined from the inventory records that two to four cases of Olympia beer were missing after the burglary. He also described the methods used in keeping inventory of merchandise. The record does not disclose what information he received from his call to the beer supplier; or whether such information was the basis of his opinion regarding the missing merchandise.

There may be a permissible inference from the quoted testimony that the witness received the information from the beer supplier and had no first hand knowledge on which to base his assertion that Olympia beer was missing from the store. There is a stronger inference he had determined from viewing the Olympia beer which remained in the store and looking at the running inventory that some of the cases of beer were gone. In other words, we cannot say, the owner's opinion was merely a recitation of out of court statements given to him by the supplier, which would be hearsay and objectionable. *Gardner v. Dollina and Elliott et al,* 206 Or 1, 288 P2d 796 (1955). It appears, as he testified, the opinion came from analysis of the store inventory. When the court, sitting without jury, is the fact finder we may presume the court disregarded any improper inferences that could have been made from the witnesses' testimony.

Defendant's third assignment of error asserts his motion for acquittal based on the sufficiency of the evidence should have been granted. ORS 136.445

requires the court to grant such a motion "if the evidence introduced would not support a verdict against the defendant." In reviewing a trial court's denial of a motion to acquit we must treat all conflicts in the evidence as having been resolved in favor of the state and give the state the benefit of all inferences that can properly be drawn from the proof submitted. *State v. Krummacher,* 269 Or 125, 523 P2d 1009 (1974).

We hold the evidence was sufficient to support a verdict of guilty.

■ The state's case consisted principally of evidence connecting Phillips with the burglary. He was given possession of his mother's car around 10:30 to 11 p.m. At approximately midnight the same car was seen by a witness behind the burglarized market where two males were putting boxes in the trunk. Approximately one hour after the break in, the car was discovered at a party where the refreshments included Olympia beer, the same brand as that missing from the store. Both Phillips and defendant were at the party. Defendant admitted in a statement to a police officer and on the witness stand he had been with Phillips when they picked up the car and had gone to the party with Phillips.

From the evidence the court could infer Phillips and the defendant were together at the time the burglary was committed and were in fact the two males observed by the witness. There may be contrary inferences consistent with innocence as pointed out by defendant. For example, as defendant asserted, Phillips could have left the party with another male, committed the burglary and returned. The choice of inferences is for the trier of fact to make. It is our impression the inferences of guilt which are permissible from the evidence are sufficient to support the finding of guilt beyond a reasonable doubt.

In his final assignment of error defendant argues if

the burglary conviction is reversed the probation revocation should be reversed. Since we affirm the conviction that issue is moot.

Affirmed.