Argued and submitted March 15, reversed and remanded for new trial
August 10, 2005

## STATE OF OREGON,
### *Respondent,*

*v.*

## BROC WILLIAM ROLLER,
### *Appellant.*

### CF02-0775; A123461

118 P3d 804

Jason E. Thompson and Andy Simrin argued the cause and filed the brief for appellant.

Katherine H. Waldo, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim* and Schuman, Judges.

SCHUMAN, J.

Edmonds, P. J., dissenting.

---

* Wollheim, J., *vice* Richardson, S. J.

**SCHUMAN, J.**

Defendant appeals from convictions for unlawful sexual penetration, ORS 163.411, and sexual abuse in the first degree, ORS 163.427. We reverse.

At the time of the incident giving rise to this prosecution, the alleged victim, K, was 14 years, 9 months old. Defendant was 16. Along with several friends, they were spending the evening in the Weston business district when defendant reported that a large party was taking place in the nearby mountains. K and two friends, one of whom was defendant's sister, decided to drive up to the party. Defendant felt sick and went home.

When defendant's mother learned that defendant's sister was going to the party in the mountains in a car "borrowed" from a friend without his permission and driven by an underage driver, she called defendant's sister and demanded that she return home. The girls returned to defendant's house. K decided to spend the night with defendant's sister. Eventually, the youths retired to the TV room where they fell asleep. Defendant and K were both on a couch, sleeping head-to-toe under a blanket. Early in the morning, K awoke. Defendant was sitting up and his "fingers were in her vagina." When asked at trial how she responded, K explained,

> "I flung my hand like this, so he thought I was still sleeping, and I closed my legs, and so I figured he would get the hint and, like, a few seconds later, he tried to open my legs, and he realized I wasn't going to move my legs, so he laid back down. And a few seconds later, I was dumbfounded, and so I jumped off the side of the couch and went into the bathroom and I didn't know what to do. I mean, he had been a friend, almost like a brother to me. So I went upstairs, and I didn't know what to do so I went back downstairs and got my stuff, got dressed, came back upstairs, and it was really early to call anybody, because it would be out of the ordinary for me, but I couldn't take it anymore. I couldn't be in that house so I called [a friend] probably about 6:45 or so."

Defendant's version of events differed from K's. According to defendant, he and K were lying under a blanket,

sleeping, when she woke him up by rubbing her toes against him. Defendant testified that he responded by rubbing K's feet and legs and that she never objected to his advances, leading him to believe she was awake and consenting. The trial court, acting as factfinder, believed K and not defendant; we therefore take her version, and not his, as true. Or Const, Art VII (Amended), § 3. In any event, he admitted eventually penetrating her vagina with his fingers.

After K reported the events, defendant was arrested and charged by a grand jury as follows:

"COUNT 1

"The defendant, on or about 08/11/01 * * * did unlawfully and knowingly penetrate the vagina of [K], with an object, to-wit: his finger, said [K] being incapable of consent by reason of physical helplessness, and

"COUNT 2

"on or about 08/11/01 * * * did unlawfully and knowingly subject [K], a person who was physically helpless, to sexual contact, by touching her vagina, a sexual and intimate part of [K]."

After a trial to the court, he was convicted on both counts and sentenced to a 100-month term for count 1 and a 75-month term for count two, the terms to run concurrently.

Defendant's first two assignments of error concern the admission at trial of evidence of an incident that occurred when defendant was nine years old. On cross-examination by defense counsel, defendant's mother testified that she was surprised about the allegations against defendant because

"[defendant] doesn't even have girlfriends. You know, maybe he takes them to proms, but mostly, he doesn't go out with girls. I mean, not that he's strange, but he just, you know, was waiting for the right girl in his life, and that's what he told me."

Defense counsel then asked, "So is it fair then to say that he's not sexually aggressive?" Defendant's mother answered, "Very fair."

On re-examination by the prosecutor, the following dialogue occurred,

"Q. What's your basis of knowledge that he's not sexually aggressive?

"A. My basis of knowledge? Well, he's my son.

"Q. So you know about past events he's been involved with?

"A. Yes. My children are very open with me about things that go on.

"Q. He's had some prior circumstance of inappropriate behavior?

"A. No.

"[Defense counsel]:   Your Honor, I'm going to object.

"[Prosecutor]:   He opened the door, Your Honor.

"[Defense counsel]:   For three—

"[Prosecutor]:   By asking her opinion of him, whether sexually aggressive or not."

The trial court indicated that it would hear the evidence before making a ruling. The witness then explained, "The only thing that I know is there was an incident where they had a fort, and in order for other people to go in, they would have to look at his penis." The witness testified further that she was unaware of any claim that "there was touching involved." Ultimately, the trial court ruled, "I'll admit [the evidence] for the extremely limited basis of the credibility of the witness. I am not admitting it for substantive evidence." In other words, the testimony did not serve to prove that the fort incident did, in fact, occur, or to prove that defendant was, in fact, sexually aggressive. Rather, it served to prove that defendant's mother was not a credible witness. The trial court's ruling is the subject of defendant's first assignment of error on appeal.

The testimony by defendant's mother that defendant was not sexually aggressive is evidence of a character trait offered to show that it would have been out of character for defendant to have touched K without her consent. OEC 404(2) authorizes the admission of such evidence:

"Evidence of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

"(a)   Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same."

In turn, however, OEC 405 authorizes inquiry on cross-examination "into relevant specific instances of conduct" for purposes of impeachment.[1] That is what occurred here. Defendant sought to offer character evidence through defendant's mother that he was not sexually aggressive. Whether evidence is relevant presents a question of law. *State v. Davis*, 336 Or 19, 25, 77 P3d 1111 (2003). Although the question is close, we conclude that the fact that defendant's mother knew about the fort episode—an episode that the only expert to appear at trial called "normal"—had no bearing on whether she lacked credibility when she asserted that, at the age of 16, defendant was not sexually aggressive. The evidence was not relevant to her credibility.

■   However, the error in allowing the prosecutor to elicit the testimony from mother was not prejudicial. Error is not prejudicial if we conclude that there is little likelihood that the error affected the court's verdict. *State v. Isom*, 306 Or 587, 595-96, 761 P2d 524 (1988). Put another way, error is not prejudicial unless it "could have affected the [factfinder's] determination." *Davis*, 336 Or at 35. In determining whether defendant was or was not sexually aggressive, the factfinder, we are convinced, would not have been influenced by evidence that his mother's opinion to the contrary was less than credible.

We reach a different conclusion, however, on defendant's second assignment of error, which deals with different testimony about the fort incident. That testimony was not only erroneously admitted, it was also prejudicial.

_____

[1] OEC 405(1) provides:

"In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct."

■■ The fort incident arose a second time during cross-examination of defendant. The prosecutor asked defendant if his contact with K was a "mistake." The following dialogue ensued:

"A. I guess so because it's brought me all the way to here, and it's not where I wanted to be with that kind of contact.

"Q. Now, you should know better than to make those kind of mistakes, shouldn't you?

"A. Not really, because I'm new at this and I didn't know.

"Q. Didn't you have a problem when you were nine?"

At that point, defense counsel objected under OEC 404(3) on the grounds that the evidence was not probative and that its prejudicial effect outweighed its probative value.[2] The trial court overruled defendant's objection, and the prosecutor proceeded to examine defendant about the details of the fort incident.

On appeal, defendant asserts:

"One of the Defense theories was that Defendant mistakenly believed that [K] was awake when he inserted his fingers into her vagina. The prosecutor elicited testimony from Defendant about the 'fort' to rebut Defendant's claim of mistake. Evidence that Defendant exposed his penis at a 'fort' when he was nine years old was not relevant to the issue of whether he mistakenly believed that [K] was awake, and the court should have excluded it."

As indicated above, defendant based his case on his assertion that he did not know that K was asleep and incapable of consenting. Under ORS 163.427, defendant had the burden of proving that he mistakenly believed that K was awake, and, of course, the state was entitled to rebut defendant's evidence in that regard. OEC 404(3) authorizes the admission of evidence of other crimes, wrongs, or acts to show an "absence of

---

[2] OEC 404(3) provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for such other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

mistake." The state offered the fort incident evidence to rebut defendant's claim that he mistakenly thought that K was awake when he touched her. The proponent of the admission of evidence that is offered to show an absence of mistake must first demonstrate that the evidence is logically relevant. *State v. Wert*, 144 Or App 581, 584, 927 P2d 1103 (1996), *rev den*, 325 Or 369 (1997).

Under OEC 401, evidence is relevant if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The state argues that the evidence of the fort incident was evidence of "defendant's thought processes" and "was relevant to prove the state's theory that this was a situation in which defendant ignored any signals that would have suggested the impropriety of his conduct and forged ahead solely upon the basis of opportunity." We are unpersuaded by the state's argument. There is no similarity between the uncharged and charged misconduct, and they are separated in time by seven years. It is not apparent to us why the evidence about the fort incident affects the probability that defendant was acting under the mistaken belief that K was awake. We conclude that the trial court erred in overruling defendant's objection to the state's cross-examination of defendant on that subject.

Further, the error was not harmless. If erroneously admitted evidence relates to a "central factual issue" to the case, it is more likely to have affected the determination than if it dealt with a tangential issue. *State v. Marrington*, 335 Or 555, 566, 73 P3d 911 (2003). Furthermore, "the less substantial the evidence of guilt, the more likely it is that an error affected the result[.]" *State v. Hansen*, 304 Or 169, 180, 743 P2d 157 (1987). In the present case, the erroneously admitted evidence went directly to the central dispositive disputed issue, and it did so in a case where the relevant and admissible evidence on that issue was extremely close.

As explained above, the court allowed the prosecutor to elicit testimony from defendant about the fort incident because the court believed that the testimony tended to show that defendant knew K was asleep when he digitally penetrated her. Had defendant been able to establish that he

thought that the victim was awake, he would have been acquitted. That is so because defendant was convicted of violating ORS 163.411 and ORS 163.427. The former provides:

"(1)   [A] person commits the crime of unlawful sexual penetration in the first degree if the person penetrates the vagina, anus or penis of another with any object other than the penis or mouth of the actor and:

"(a)   The victim is subjected to forcible compulsion;

"(b)   The victim is under 12 years of age; or

"(c)   The victim is incapable of consent by reason of mental defect, mental incapacitation or physical helplessness."

ORS 163.427 provides:

"(1)   A person commits the crime of sexual abuse in the first degree when that person:

"(a)   Subjects another person to sexual contact and:

"(A)   The victim is less than 14 years of age;

"(B)   The victim is subjected to forcible compulsion by the actor; or

"(C)   The victim is incapable of consent by reason of being mentally defective, mentally incapacitated or physically helpless[.]"

The charging instrument specified that defendant was accused of violating both of these statutes based not on compulsion or age but on the victim's "physical helplessness." As defined in ORS 163.305, that term means "that a person is unconscious * * *." It is therefore undisputed that the state's case depended on proving beyond a reasonable doubt that defendant penetrated the victim while she was unconscious, that is, while she was asleep.

Defendant, on the other hand, relied on ORS 163.325(3):

"In any prosecution under ORS 163.355 to 163.445 in which the victim's lack of consent is based solely upon the incapacity of the victim to consent because the victim is mentally defective, mentally incapacitated or physically helpless, it is an affirmative defense for the defendant to

prove that at the time of the alleged offense the defendant did not know of the facts or conditions responsible for the victim's incapacity to consent."

At trial, defendant admitted the act of digital penetration; the only disputed issue was whether or not he knew, when he committed the act, that K was asleep and therefore physically helpless. Thus, in erroneously allowing testimony on the ground that it showed defendant's *lack* of mistake, the court allowed testimony that it believed relevant to the heart of defendant's case and not to a tangential issue. When the evidence is in (or close to) equipoise, then even an otherwise insubstantial error may suffice to tip the scales one way or the other. *Hansen,* 304 Or at 180. In the present case, *no* persuasive competent evidence except for some lack of candor by defendant supported the inference that he knew K was awake. K did not testify that she spoke to defendant, and nobody else witnessed the interaction. Thus, regarding defendant's affirmative defense of mistake, the case pit defendant's testimony against the nonexistent inference that the trial court erroneously believed could be drawn from the fort incident.

In sum, the trial court erroneously admitted evidence on the ground that it was relevant to rebut defendant's "mistake" defense. The state presented little or no other evidence that had that effect. In announcing its verdict, the trial court did not disclose what evidence it relied on. *Compare State v. Hunter,* 141 Or App 73, 918 P2d 104, *rev den,* 324 Or 78 (1996) (error found harmless because trial court specified that it did not rely on erroneously admitted evidence); *State v. Shipp,* 27 Or App 675, 557 P2d 244 (1976) (same). Under these circumstances, we cannot conclude that the error had little effect on the court's verdict.[3]

Reversed and remanded for new trial.

---

[3] Defendant also argues that sentencing a 16-year-old first offender to over eight years of incarceration for an act that did not involve forcible compulsion and was committed against another teenager violates the Cruel and Unusual Punishment Clause of Article I, section 16, of the Oregon Constitution. That argument cannot prevail in light of this court's decision in *State v. Thorp,* 166 Or App 564, 2 P3d 903 (2000), *rev dismissed,* 332 Or 559 (2001). That case was never reviewed by the Supreme Court.

**EDMONDS, P. J.,** dissenting.

In this case tried to the court without a jury, the majority errs when it holds (1) that the evidence offered to impeach defendant's mother's testimony was not admissible for that limited purpose; (2) that the admission of similar evidence at a later time in the trial was error. The majority's errors unnecessarily result in a retrial in what amounts to a swearing match between defendant and the victim, after an impartial trial in which defendant's credibility was found lacking by the trial court. For the reasons that follow, I would affirm defendant's conviction.

The first error that the majority commits is in holding that the evidence about the fort incident was not relevant to impeach defendant's mother's testimony. On cross-examination, mother testified that it was "[v]ery fair" to say that defendant was "not sexually aggressive." On redirect examination, defendant's mother was asked if defendant "had some prior circumstance of inappropriate behavior[.]" She answered, "No." That answer led, over defendant's objection, to the trial court's admission of the fort incident "for the extremely limited basis of the credibility of the witness." The court clarified, "I am not admitting it for substantive evidence."

Mother's testimony that it was "very fair" to say that defendant is not sexually aggressive is evidence of a character trait offered to show that it would have been out of character for defendant to have penetrated the victim without her consent. OEC 404(2) authorizes the admission of such evidence:

> "Evidence of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:
>
> "(a)  Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same[.]"

In turn, however, OEC 405 authorizes inquiry on cross-examination "into relevant specific instances of conduct" for

purposes of impeachment.[1] That is what occurred here: the state sought to impeach defendant's character evidence with evidence of a specific instance when he did not act in conformity with his alleged character.

The majority concludes that the fort incident evidence was not relevant to the defendant's credibility. Whether evidence is relevant is governed by OEC 401. It provides:

> " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

To determine "relevancy" under that definition, the disputed evidence needs to be viewed in context with the rest of the evidence.

After the victim initially reported defendant's penetration of her to the authorities, defendant initially told the police, his therapist, his mother, and his family that no penetration had occurred and that victim was lying or making up the story. However, defendant admitted before trial that he had lied and that sexual contact with the victim had occurred. At trial, when asked about his initial claim that no penetration had occurred, defendant admitted, "I lied about it. I'll admit that I lied about—or I denied it." On cross-examination at trial, defendant also conceded:

> "Q. You told all your family and friends nothing happened?
>
> "A. Right, I was scared. I didn't know what was going on.
>
> "Q. They've gone to great lengths to make her [the victim] out to be a liar.
>
> "A. Somewhat, yeah."

---

[1] OEC 405(1) provides:

"In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct."

As his own therapist testified, defendant

> "followed a pattern which is very common for sex offenders. Initially, there is usually a denial, where the offender, or the accused offender, says that he did not do anything, and then, after a while, there's often a minimization, or at least the declaration that they did something wrong and, eventually, there's a declaration that they did more wrong."

Defendant's defense at trial was two-fold. First, he argued that the victim had consented to his penetration. Alternatively, he argued that he reasonably believed that the victim was awake and that she consented to his penetration of her, even if, in fact, she had not consented. To overcome the obvious dilemma of being an admitted liar, defendant needed to demonstrate to the trial court that his defenses were not recent fabrications. It was in this factual context that defendant offered the testimony of his mother to vouch for his credibility. To that end, his mother asserted in response to defense counsel's question that defendant had no history of acting in a sexually aggressive manner.

It was proper impeachment for the state to ask defendant's mother whether she was aware of a prior incident in which defendant had been involved in "inappropriate behavior" under OEC 405(1). Apparently, the majority believes that defendant's condition that other children view his penis before he would permit them to enter into his fort is not behavior that a reasonable factfinder could find inappropriate. It could be that a factfinder might accept defendant's assertion that the fort incident amounted to nothing more than the expressions of childish sexual curiosity, but a factfinder would not be required to draw only that inference. A reasonable factfinder would also be entitled to infer that defendant's conduct with the other children was motivated by his prurient interests involving members of the opposite sex. The latter inference is relevant under OEC 401 to rebut defendant's evidence that it would have been out of character for him to be involved in inappropriate sexually related conduct.

The relevance of the fort incident evidence is also demonstrated by the testimony of defendant's therapist, a

licensed clinical psychologist and sex offender treatment provider. Defendant's therapist testified on direct examination as a defense witness that defendant has some "slight sexual history." A reasonable factfinder would be entitled to infer from the therapist's testimony that he relied on the fort incident as probative sexual history for defendant. Later in his testimony, the therapist explained:

> "I think he does have sexual needs and sexual desires, which have difficulties finding an outlet. So I do think he has a sexual problem, but I don't believe * * * it is a serious problem."

On cross-examination by the prosecutor, the therapist gave the following testimony regarding defendant's penetration of the victim:

> "Q. It is your opinion that he needs treatment?
>
> "A. Yes, it is.
>
> "Q. And it's your opinion that he knew what he was doing was wrong?
>
> "A. Yes, it is.
>
> "Q. Would you say he's—this was an event of opportunity?
>
> "A. Yes, I would."

In summary, defendant offered his mother's testimony as character evidence to vouch for his own credibility. The trial court admitted the evidence of the fort incident for the sole purpose of impeaching defendant's mother's testimony about defendant's character. OEC 405(1) authorizes inquiry on cross-examination of "relevant specific instances of conduct" for purposes of impeachment. When opinion evidence of a pertinent character trait is offered, evidence of specific instances of conduct that are inconsistent with that alleged trait make it less likely that the character evidence will be persuasive. The fact that defendant's mother did not consider his behavior during the fort incident "inappropriate" diminishes the probative value of her assertion that defendant would not act out in a sexually aggressive manner. The

majority is wrong when it holds under OEC 401 that the evidence of the fort incident was not relevant evidence for the limited purpose for which it was admitted.

The second issue in this case involves the admission of evidence about the fort incident on cross-examination of defendant. The content of that evidence differs somewhat from evidence that was admitted to impeach the testimony of defendant's mother, and it was admitted for a different purpose. As indicated above, defendant defended the charges not only on the basis that the victim consented to his penetration but, alternatively, pursuant to ORS 163.325(3), that he did not know that she was asleep and incapable of consenting. Under that statute, defendant had the burden of proving that he believed that the victim was awake. Of course, the state was entitled to rebut defendant's evidence in that regard. OEC 404(3) authorizes the admission of evidence of other crimes, wrongs, or acts to show an "absence of mistake."[2] The proponent of evidence that is offered to show an absence of mistake must first demonstrate that the evidence is logically relevant. *State v. Wert*, 144 Or App 581, 584, 927 P2d 1103 (1996), *rev den*, 325 Or 369 (1997).[3]

On cross-examination of defendant, the prosecutor asked, "Didn't you have a problem when you were nine?" Defense counsel objected under OEC 404(3). The prosecutor explained to the court that "[defendant] indicated that this is a mistake, so now I get to determine whether or not he might have had prior events in his life that would lead this mistake to not be quite the mistake he once made it to be." Defense counsel replied, "I think it's very prejudicial and has extremely little probative value; in fact, no probative value of any sort." The trial court ruled, "I'll allow it for the purpose

---

[2] OEC 404(3) provides that

"[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[3] In *Wert*, the defendant, who had been charged with sexual abuse, admitted that he touched the victim but claimed that the touching was an accident or a mistake. We held as admissible evidence that the defendant had touched the victim's 12-year-old friend under similar circumstances two or three days after the charged abuse occurred to rebut defendant's claim of mistake. 144 Or App at 586.

that [the prosecutor] explained." Thus, the evidence that had yet to be elicited was admitted for a limited purpose based on the prosecutor's explanation of what he expected it to show.

Thereafter, the prosecutor elicited the following testimony from defendant on cross-examination:

"Q. I know you didn't get in trouble. That's my point. But your mom indicated that you had a fort, where part of the deal was that girls could look at your private parts.

"A. Right.

"Q. Nothing happened? You didn't get in trouble for that? There was no conversation about that? Nobody dealt with it at all?

"A. I was told by, I think it was—no, I didn't get in trouble for that. I didn't. I was teased about it a lot.

"Q. So wouldn't that make you more aware, more careful that you didn't put yourself in a situation that wasn't even remotely like that again?

"A. It's not the same situation.

"Q. I'm not saying it's the same situation. What I'm saying is, when you're touching her and her eyes are closed, and she's asleep, and she's not saying anything to you—

"A. I don't believe she was asleep.

"Q. I know that you don't believe that. That's not my question. It didn't dawn on you that, I better be careful since I had this prior event in my life, and I don't want anybody to misunderstand?

"A. No, I thought that was being a regular teenage boy and exploring with a girl."

Later, defendant explained his version of the fort incident on redirect examination by his counsel:

"Okay. I was nine years old. I had a fort and the rules were we had to play truth or dare with showing our privates. We, like, dared each other to show our privates to each other."

As the testimony developed after the trial court ruled on defendant's objection, the prosecutor was unable to establish defendant's acknowledgment of the state's premise

for its inquiry, *i.e.*, that defendant knew that he had made a mistake in the past about the appropriateness of sexually related conduct, and, therefore, because of that experience, he should have been more careful to ascertain whether, in fact, the victim was asleep before he penetrated her. Contrary to the prosecutor's expectation, defendant testified that he did not "get in trouble" because of the fort incident and that there was nothing in the circumstances of the fort incident that would have caused him to be more cautious about whether the victim was awake. Significantly, defendant did not move to strike any of his testimony given in response to the prosecutor's questioning after the trial court overruled his objection. Rather, he sought to turn the testimony to his advantage by characterizing the fort incident as a "truth or dare" game among children.[4]

The majority errs because it does not evaluate the propriety of the trial court's ruling at the time that it was made. At that time, there was nothing that enabled the trial court to forecast how defendant might answer the prosecutor's inquiry. Thus, the question on appeal is whether the inquiry, as articulated by the prosecutor, could have elicited relevant evidence if it had produced the answers that the prosecutor hoped for. As stated above, evidence is "relevant" under OEC 401 if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

OEC 401 provides a "very low threshold" for the admission of evidence. *State v. Hampton*, 317 Or 251, 255 n 8, 855 P2d 621 (1993). The proper inquiry is whether the disputed evidence even slightly increases or decreases the probability of the existence of any material fact in issue. "If the item of evidence affects the balance of probabilities to any degree, it is logically relevant." *State v. Gailey*, 301 Or 563, 567, 725 P2d 328 (1986). When asked by defense counsel whether he believed that the victim was consenting to his

---

[4] That was a wise tactical choice, particularly in light of the fact that his own therapist apparently considered the evidence of the fort incident to constitute part of his sexual history, but it also leads to a significant consequence on appeal, as I will explain.

actions, defendant testified, "Yeah, the way she was moving against my body, yes, I did. I believed that she wanted me to do something, and as I moved my hands down her body, she never objected, and so that is why I went as far as I went."

Under the circumstances, if the prosecutor had been able to establish defendant's acknowledgment that the fort incident was inappropriate conduct, the evidence would have decreased the probability that defendant reasonably believed that the victim was awake and that she consented to his penetration. As the state argues on appeal, "[d]efendant's apparent failure to have gained any insight from the incident involving exposing his penis makes defendant's reasoning that he thought that, if a girl did not actively protest sexual conduct, he could insert his fingers in her vagina even more unbelievable." If defendant had acknowledged to the prosecutor that his prior conduct was inappropriate, as the prosecutor apparently had hoped, that acknowledgment would have decreased the probability that defendant reasonably believed that the victim's failure to object was a manifestation of her consent for him to penetrate her. In other words, as the prosecutor told the trial court in response to defendant's objection, defendant's experience regarding prior sexually inappropriate conduct informs the perception of what a *reasonable* person would interpret subsequently as objective signs of consensual behavior and affects the balance of probabilities regarding his veracity.

But even if the majority is correct that the fort incident evidence was not relevant evidence under OEC 401 and that the trial court should have sustained defendant's objection at the time that it was made, any error was harmless. Defendant's choice to testify on redirect examination about the substance of the fort incident evidence he sought to exclude earlier defeats any argument that the testimony about the fort incident constituted prejudicial error. In *State v. McGinnis*, 335 Or 243, 250, 64 P3d 1123 (2003), the court held that, "[w]hen a defendant testifies, however, and admits the substance or truthfulness of the matters contained in the erroneously admitted evidence, the facts established by the in-court admissions may eliminate any harm associated with the erroneously admitted evidence." *See also State ex rel Juv. Dept. v. Cook*, 325 Or 1, 5, 932 P2d 547 (1997) (holding error

was harmless when the youth took the stand and testified to statements that were just as incriminating as the statements he unsuccessfully sought to suppress); *see also State v. Orr*, 197 Or App 327, 332, 105 P3d 904, *rev den*, 328 Or 680 (2005) (where the defendant objected on the basis of relevance, the admission of additional details of the defendant's prior wrongful conduct was deemed harmless error in light of the fact that the defendant introduced evidence in his case-in chief about the prior wrongful conduct). The same principle that was applicable in those cases is applicable here. As the *McGinnis* court noted, "the appellate review question is whether, in light of the defendant's trial testimony, *the defendant was harmed by the challenged statements.*" 335 Or at 250 (emphasis in original). Here, defendant's own testimony on redirect examination eliminated any possibility that the overruling of his objection to the prosecutor's cross-examination about the fort incident harmed him.

Moreover, the majority's harmless error analysis is incorrect for another reason. Whether the case is tried to the court or to a jury can be a significant fact in any harmless error analysis. There is considerable precedent for the proposition that, in a trial to the court, a court is presumed to know and correctly apply existing law. For instance, in *State v. Cafarelli*, 254 Or 73, 76, 456 P2d 999 (1969), the defendant assigned error to evidentiary rulings made by the trial court. In response, the Supreme Court stated:

> "In a trial to the court we can assume that any questionable evidence would be disregarded. There is no indication that the court relied on the evidence in reaching the verdict of guilty. There was no need to rely on the questioned evidence."[5]

---

[5] In *State v. Marrington*, 335 Or 555, 565, 73 P3d 911 (2003), the court rejected the state's reliance on *Cafarelli*, commenting,

> "It may be that the foregoing statement in *Cafarelli* describes a rule of appellate review that is applicable in an appropriate case. We have no occasion in this case, however, to undertake an extensive analysis of its origin or the appropriateness of its application in criminal cases. Nonetheless, suffice it to say that, if carried to its logical extreme, that rule—if that is indeed what it is—would obviate the need to conduct any other kind of harmless error analysis. That cannot be true in all cases. If, for example, the erroneously admitted evidence had been crucial to a particular outcome in a case, then some further analysis must be undertaken. This case is illustrative."

That is precisely the situation here, as discussed more fully below.

Nonetheless, according to the majority,

> "regarding defendant's affirmative defense of mistake, the case pit defendant's testimony against the nonexistent inference that the trial court erroneously believed could be drawn from the fort incident."

201 Or App at 175. From the premise that there was no swearing match between defendant and the victim, the majority concludes that the admission of the fort incident evidence must have played a significant role in the trial court's guilty verdict and, therefore, its admission could not have been harmless. The above reasoning is flawed in several respects. To begin with, error is deemed prejudicial if we cannot conclude that there is little, if any, likelihood that the error affected the court's verdict. *State v. Isom*, 306 Or 587, 595-96, 761 P2d 524 (1988). Applying that standard to the facts in this case, the following observations are pertinent in response to the majority's assertion.

First, the majority's premise that the issue involving defendant's purported mistaken belief did not present a credibility issue or a swearing match between defendant and the victim is incorrect. Defendant's testimony that he reasonably believed that the victim was awake when he penetrated her is contradicted by his earlier claims that no sexual contact occurred with the victim and the victim's testimony that she was asleep until she awoke to discover defendant's fingers in her vagina. Indeed, her report of that allegation remained consistent from the time that she first reported it throughout the 26 months that it took for the matter to go to trial, a time period when defendant, his family, and his friends accused her of fabricating her allegation and when defendant's own position about what occurred changed. The persuasiveness of that kind of evidence cannot be divorced, as the majority tries to do unsuccessfully, from the consideration of defendant's credibility regarding his assertion that he reasonably believed that the victim consented to his penetration. For one

---

Significantly, the court did not overrule *Cafarelli*, and this case is a proper case for the application of the *Cafarelli* rule based on the above circumstances.

thing, the majority's reasoning ignores the well-recognized principle that a witness's testimony found to be false in part is to be distrusted in the rest of that person's testimony. *See, e.g.*, UCrJI 10.04. All of the evidence that bears on defendant's overall credibility is also relevant to the determination of his veracity regarding his assertion that he reasonably believed that the victim was awake.

Second, the fort incident evidence itself lacks intrinsic weight, particularly when compared to weight of the other evidence. When defendant's testimony about the fort incident is considered in its entirety and in the context of the other evidence admitted at trial, it constitutes impeachment, at most, on a collateral matter. It is a long-standing rule in this state that a witness's testimony cannot be impeached on any matter that is collateral and irrelevant to the issue at hand,[6] *see, e.g., Williams v. Culver*, 39 Or 337, 341, 64 P 763 (1901), and it should be presumed that the trial court applied that well-recognized rule in arriving at its verdict. *See Cafarelli*, 254 Or at 76. In fact, the trial court, on the two occasions that it ruled on the issue of admissibility of the evidence, expressly limited the purpose for which the fort incident evidence was admitted. That is some recognition on the part of the trial court that it considered the disputed evidence to carry minimal persuasive force.

Finally, apart from the victim's testimony, which was not successfully impeached, the most persuasive evidence of defendant's guilt is his own testimony. He admitted to the court that he had lied previously on multiple occasions about not having sexual contact with the victim, and he relied on the victim's inaction to his advances as his justification for his assertion that she either consented to his penetration or that he reasonably believed that she was awake. As defendant's therapist observed in his testimony, "[Defendant] tells me he thinks she was awake. He did not give me a lot of evidence that she was awake, that she opened her eyes, that she said anything." Ultimately, the trial court must have

---

[6] "The test of whether a fact inquired of during cross-examination is collateral is whether the cross-examining party would have been entitled to prove it as a part of and tending to establish its case." *State v. Johnson*, 277 Or 45, 48, 559 P2d 496 (1977).

reached the same conclusion that had been reached by his therapist: that defendant "knew what he was doing was wrong." Based on the above evidence, I have no difficulty in concluding that there is little likelihood that the evidence of the fort incident could have affected the trial court's decision-making process.

Accordingly, I dissent for all of the reasons expressed above.