Argued and submitted November 24, 2008, reversed and remanded April 1, 2009

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JAMES BRIAN IDOL,
*Defendant-Appellant.*

Multnomah County Circuit Court
051035911; A131719

204 P3d 830

Andy Simrin argued the cause and filed the brief for appellant.

Simon C. Whang, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Richardson, Senior Judge.

BREWER, C. J.

## BREWER, C. J.

Defendant appeals his conviction for possession of a controlled substance, *former* ORS 475.992 (2003), *renumbered as* ORS 475.840 (2005), arguing that the trial court erred in denying his motion *in limine* to exclude evidence of a laboratory report on the ground that the criminalist who prepared the report was not made available by the state for cross-examination. Following the trial court's ruling that the laboratory report was admissible, defendant was tried to the court on stipulated facts. On appeal, he argues that, under *State v. Birchfield*, 342 Or 624, 157 P3d 216 (2007), admission of the laboratory report was error. The state acknowledges that admission of the report was erroneous under *Birchfield*, but argues that the error was harmless.[1] As explained below, we are not able to conclude on this record that the error was harmless and, accordingly, we reverse and remand.

The facts, most of which are not in dispute, were developed at a suppression hearing. Defendant was stopped for a traffic infraction. During the course of the stop, a police officer, Frankus, asked for consent to search defendant for weapons and illegal drugs. Defendant consented, and Frankus found what he described as "a used meth pipe and a bag with methamphetamine." Frankus also described the container in which he discovered those items as an opaque tube designed to carry M & M candies; he further testified that he had encountered such tubes at least 50 times, and had "only * * * one time I can remember that there was not a meth pipe or meth inside those containers." Shortly thereafter, another officer on the scene, Devlin, asked defendant, "[W]hy did you give my partner consent to search you if you knew you had drugs on you?" Defendant replied, "[W]ell, it was there, so cooperation and honesty was the best way to go."

At the suppression hearing, defendant raised the issue concerning the admissibility of the laboratory report

---

[1] The state argues alternatively that the claim of error was not sufficiently preserved. We reject that contention without discussion.

identifying the substance found in his possession as methamphetamine. The trial court ruled, consistently with then-existing case law, that the state was not required to produce the technician who prepared the report in order for the report to be admitted into evidence and admitted the report into evidence. The report indicated that the bag and pipe found in defendant's possession contained methamphetamine. At that point, defendant agreed to a stipulated facts trial, stipulating to the facts shown during the suppression hearing, but expressly reserving his challenge to the admissibility of the laboratory report. The trial court convicted defendant based on the stipulated facts, and the present appeal ensued.

Under *Birchfield*, admission of a laboratory report without requiring the state to produce at trial the criminalist who prepared the report, or to demonstrate unavailability, violates a defendant's right to confront adverse witnesses pursuant to Article I, section 11, of the Oregon Constitution. 342 Or at 631-32. We recently addressed the issue of harmless error in this context in *State v. Maiden*, 222 Or App 9, 13, 191 P3d 803 (2008), *rev den*, 345 Or 618 (2009):

> "We will affirm a judgment of conviction notwithstanding the erroneous admission of evidence if there is little likelihood that the admission of the evidence affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). As the court explained in *Davis*, the correct focus of that inquiry 'is on the possible influence of the error on the verdict rendered, not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling.' *Id.* As an initial step, the court determines the particular evidentiary issue that is subject to harmless error analysis. *Cf. State v. Cook*, 340 Or 530, 544-45, 135 P3d 260 (2006) (applying that process in the context of a federal harmlessness analysis). After identifying the pertinent issue, the court considers the nature of the erroneously admitted evidence in the context of other evidence on the same issue. *See State v. Gibson*, 338 Or 560, 576-77, 113 P3d 423, *cert den*, 546 US 1044 (2005) (pursuing that inquiry). That consideration involves the assessment of any differences between the quality of the erroneously admitted evidence and other evidence admitted on the same issue. *Davis*, 336 Or at 33-34 (focusing on whether the finder of fact would have regarded the evidence as duplicative, cumulative, or

unhelpful in its deliberations). In addition, in determining the possible influence of the error on the verdict, we consider the importance of the erroneously admitted evidence to a party's theory of the case. *Id.* at 34 ('[T]he excluded evidence goes directly to the heart of defendant's factual theory of the case.'); *State v. Perkins*, 221 Or App 136, 145, 188 P3d 482 (2008) (declining to find harmlessness where erroneously admitted evidence went 'directly to the heart of [the state's] factual theory of the case') (quoting *Davis*, 336 Or at 34). 'If erroneously admitted evidence relates to a "central factual issue" to the case, it is more likely to have affected the determination than if it dealt with a tangential issue.' *State v. Roller*, 201 Or App 166, 173, 118 P3d 804 (2005)."

(Brackets in original.)

In *Maiden*, a police officer who was inside the defendant's apartment noticed a substance that the officer believed to be methamphetamine, along with paraphernalia commonly used with methamphetamine. 222 Or App at 11-12. The defendant, although he denied that the materials belonged to him, identified himself as a "meth junkie." *Id.* at 12. A field test of the substance found indicated that it was methamphetamine. *Id.* The defendant's theory at trial was that the methamphetamine belonged to his nephew, who also lived in the apartment. *Id.* On that record, we held that the erroneous admission of the laboratory report identifying the substance as methamphetamine was harmless:

"[I]n the abstract, the evidence was pertinent to a fundamental issue in the case [*i.e.,* the identity of the substance]. Nevertheless, the court also received other evidence on the same issue: the officers field tested the substance, presumptively identifying it as methamphetamine; the officers observed paraphernalia consistent with methamphetamine use; and, most important, the court received evidence through an officer's testimony that defendant had admitted that the pertinent substance was, in fact, methamphetamine."

*Id.* at 14. We concluded that, although the "[d]efendant's admission, coupled with the field test, may not have the same 'scientific' quality as the erroneously admitted laboratory report" any difference in the quality of the evidence was not significant "because the erroneously admitted evidence was

not central to either party's theory of the case." *Id. See also State v. Newsome*, 224 Or App 273, 197 P3d 559 (2008) (reaching same conclusion, when disputed issues at trial concerned only identity and consideration).

We reached a similar conclusion in *State v. Willis*, 219 Or App 268, 182 P3d 891, *rev den*, 345 Or 416 (2008). In that case, like this one and *Maiden*, the defendant objected to the admission of a laboratory report identifying a controlled substance. There, the officer who seized the substance identified it as marijuana based on his 14 years of training and experience, which included making several hundred arrests for possession of marijuana. Likewise, the informant who purchased the marijuana identified it as such, testifying that he had "been around enough" marijuana to do so. *Id.* at 271-72. At trial, defense counsel did not challenge either witness's ability to identify the substance as marijuana. Rather, the defense theory concerned the identity of the person who sold the substance to the informant. *Id.* at 273-75.

The present case differs from *Maiden* and *Willis* in several key respects. As noted, the touchstone of our inquiry concerns the quality of the erroneously admitted evidence, as well as other evidence admitted on the same issue. *Davis*, 336 Or at 33-34. Additionally, the centrality of the evidence to the parties' theories of the case is significant. *Maiden*, 222 Or App at 14; *Willis*, 219 Or App at 273-75. Here, the erroneously admitted evidence identified the substance found in defendant's possession as methamphetamine. The officer who found it believed it to be methamphetamine, and we are able to infer from his testimony that the reason he believed it to be methamphetamine was that it was located with items that, in his experience, were associated with methamphetamine use. Unlike in *Maiden*, however, there is no evidence that the officer conducted a field test to identify the substance. Moreover, unlike in *Willis*, the substance was not one that was easily identified by its characteristics, by witnesses who had a basis for making such identifications. And, although this case, like *Maiden*, does have an arguably incriminating admission by defendant, in which he implicitly acknowledged to an officer that the substance was "drugs," unlike in *Maiden*, the admission did not identify the *type* of drug at issue.

Finally, in contrast to *Maiden* and *Willis*, the erroneously admitted evidence related to a central factual issue in the case. In those earlier cases, the defendants presented defenses that implicitly acknowledged the nature of the substance but disputed the identity of the perpetrator of the crimes. Here, given defendant's stipulation to the facts recited above, with the sole reservation being the laboratory report's identification of the substance, we must conclude that the identity of the substance was central to the *only* defense presented by defendant.

On balance, we conclude that the erroneously admitted evidence was highly pertinent to defendant's theory of the case and was stronger than any of the other evidence presented concerning the identity of the substance on which defendant's conviction was based. We therefore are unable to conclude that the erroneous admission of the laboratory report was unlikely to have affected the verdict.

Reversed and remanded.